

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BLUE WATER ENDEAVORS, LLC** | § | |
| xx-xxx3506 | § | Case No. 08-10466 |
| 5555 Calder Ave., Beaumont, TX 77706 | § | |
| | § | |
| Confirmed Debtor | § | Chapter 11 |

| | | |
|---|---|---|
| BLUE WATER ENDEAVORS, LLC, | § | |
| ROBERT NORDBERG, and | § | |
| DAWN NORDBERG | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 10-1015 |
| | § | |
| AC & SONS, INC., | § | |
| COLBURN R. McCLELLAND, | § | |
| ANGIE McCLELLAND, and | § | |
| ROBERT O. GROTE | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF DECISION

Before the Court for consideration is a Motion to Dismiss filed by Defendants AC

& Sons, Inc., Colburn McClelland, and Angie McClelland (collectively, "the McClelland

Defendants") on August 12, 2010, that alleges that dismissal of the complaint in this

adversary proceeding is warranted under Rules 12(b)(1) and 12(b)(6) of the Federal Rules

of Civil Procedure, made applicable to this proceeding by Fed. R. Bankr. P. 7012.  The

remaining Defendant, Robert O. Grote, subsequently filed a similar motion that primarily

addresses the merits of the complaint, but which incorporates by reference the arguments

presented by the McClelland Defendants.  Juxtaposed against the Defendants' dismissal

motions is a motion to remand filed by the Plaintiffs, Blue Water Endeavors, LLC, Robert

Nordberg, and Dawn Nordberg (the "Plaintiffs"), on August 25, 2010, in which they

assert that the Court possesses "no basis . . . to retain jurisdiction as the Plan provided for

repayment to all the creditors of Blue Water Endeavors, LLC" due to the absence of

complete diversity among the parties.  Based upon the Court's consideration of the

pleadings and the evidence submitted by the parties, the Court concludes that the

Defendants' respective Motions to Dismiss should be granted in part and denied in part

and that, as to the claims of the individual plaintiffs remaining after that dismissal, the

Plaintiffs' Motion for Remand should be granted.  This memorandum of decision

disposes of all issues pending before the Court.[1]

## Factual and Procedural Background[2]

Fat Mac's Smokehouse is a barbeque restaurant located in Beaumont, Texas. On or

about November 20, 2006, one of the Plaintiffs, Blue Water Endeavors, LLC (hereafter

"Blue Water") purchased the restaurant and the real property on which it was located.

The individual plaintiffs in this proceeding, Robert and Dawn Nordberg, serve as the

---

[1]  This Court has jurisdiction to consider the Motions pursuant to 28 U.S.C. §§1334, §157(a), and §157(c)(1).

[2] Much of the factual background described herein is taken from Plaintiffs' Original Petition, which was filed on June 14, 2010 in the 58th Judicial District Court of Jefferson County, Texas.  The procedural background arising from the Blue Water bankruptcy case was derived from the docket of that proceeding.  With regard to consideration of the Defendants' Motion to Dismiss under Rule 12(b)(6), the Plaintiffs' factual allegations will be accepted as pled and will be viewed in the light most favorable to the Plaintiff (the non-moving party to the Defendants' Motion).

principals and sole owners of Blue Water.  Following the closing of the sale in 2006, Blue

Water began operating the restaurant under the assumed name Fat Mac's Smokehouse,

which it had acquired as a part of the sale.

Subsequent to the sale, Fat Mac's did not financially perform to the level projected

and it began experiencing financial difficulties due to significant shortfalls in revenue.  As

a result, Blue Water began contemplating the sale of the real property upon which the

restaurant was located in order to move the business to a more fertile location.  However,

appraisal and market analysis on the real property demonstrated that the value of that

property was less than one-half of that paid for it in the original sale.  This loss of value

made any sale of the property unfeasible and the ongoing difficulties eventually forced

the Nordbergs to pay the outstanding bills for the company as they came due.

Eventually, Blue Water's financial troubles exhausted the Nordbergs' ability to

keep the company afloat and the company faced foreclosure by a secondary lienholder on

the real property.  To avoid this fate, Blue Water filed in this Court a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code on August 27, 2008.  In fulfillment of

its statutory duties as a debtor, Blue Water filed the required schedules and statements on

September 9, 2008.  Such schedules made no reference to any pending litigation nor did

they reveal any potential litigation claims held by the Debtor at the time of the filing of

bankruptcy.  While under the protection of the Court, Blue Water was designated as a

small business debtor and served as a debtor-in-possession pursuant to §1107 of the

Bankruptcy Code.

On January 20, 2009, Blue Water proposed a Chapter 11 plan of reorganization as a small business debtor and filed an accompanying disclosure statement.[3]  The Debtor later amended the plan of reorganization.[4]  After conditionally approving the Disclosure Statement, the Court confirmed Blue Water's Chapter 11 plan as amended on March 3, 2009.[5]  The bankruptcy case for Blue Water was closed through the entry of a final decree on September 9, 2009.

Almost fifteen months after its plan confirmation, on June 14, 2010, Blue Water, along with its individual owners, filed an original petition in the 58th Judicial District Court of Jefferson County, Texas under Cause No. A 187-070, styled *Blue Water Endeavors, LLC d/b/a Fat Mac's Smokehouse, et al. v. AC & Sons, Inc., et al*.  In that petition, the Plaintiffs seek relief for various claims arising in the pre-petition period including, *inter alia*, breach of contract, breach of duty of good faith and fair dealing, several different types of fraud, and various forms of misrepresentation.[6]  The petition named as defendants Colburn R. McClelland, Angie McClelland, AC & Sons, Inc., and Robert O. Grote, all of whom played some role in the original sale of Fat Mac's Smokehouse to the Blue Water group.  The McClelland Defendants removed the case to

---

[3] See *Chapter 11 Small Business Plan* (dkt #48) and a *Chapter 11 Small Business Disclosure Statement* (dkt #47) each filed on January 20, 2009 in the Debtor's bankruptcy case, 08-10466.

[4] See *First Amendment to Blue Water Endeavors, LLC, d/b/a Fat Mac's Smokehouse's Plan of Reorganization* [dkt # 54] filed on February 27, 2009.

[5] Docket #57 in 08-10466.

[6] See ¶¶ E-M of *Plaintiffs' Original Petition* at pp. 4-7.

federal district court on July 30, 2010 pursuant to 28 U.S.C. § 1334(b) as a matter arising under, arising in, or relating to, the Blue Water bankruptcy case.  The United States District Court then referred this case to this Court, which had previously handled the Blue Water bankruptcy case.  The McClelland Defendants subsequently filed their motion to dismiss to which the Plaintiffs objected.  The Plaintiffs then filed their motion to remand this adversary proceeding back to state court for adjudication to which the Defendants have objected.

The Defendants' Motion outlines two independent grounds for dismissal under Rule 12.  First, the Defendants allege that Blue Water, the reorganized debtor, has no standing to bring any complaint against them for claims existing on or before the date of confirmation.  According to the Defendants, the plan of reorganization confirmed for the benefit of Blue Water did not retain any of the asserted claims for relief as required by 11 U.S.C. § 1123(b)(3)(B) and that, absent such retention, Blue Water relinquished any standing to prosecute those claims following confirmation of its plan.  The Defendants argued alternatively that pleading defects in the Plaintiffs' Original Petition rendered the case appropriate for dismissal under Rule 12(b)(6), which includes the "failure to state a claim upon which relief can be granted."

The issue of standing to bring pre-petition claims in the post-confirmation period involves a determination of whether a reorganized debtor retained such causes of action pursuant to 11 U.S.C. §1123(b)(3).  Naturally, that determination requires the Court to analyze certain documents filed in the original bankruptcy case and thus go "outside the

pleadings" that have been filed in this adversary proceeding. See Fed. R. Civ. P. 12(d).

Specifically germane to the determination of the standing issue are Blue Water's

proposed plan of reorganization, the disclosure statement accompanying that plan, the

subsequent amendment to the proposed plan, and the schedules that were all filed in the

Blue Water bankruptcy case. From an abundance of caution, the Court issued an order by

which the parties were notified of the Court's intent to consult matters outside the

pleadings in this adversary proceeding and to allow the parties to submit any

supplementary materials they believed to be germane to the determination of the pending

motions.[7] The Court's deadline for submission of supplemental materials was set for

November 5, 2010, with a further deadline for rebuttal materials set for November 12,

2010. Both deadlines passed without the submission of supplemental materials by any

party.

## Discussion

*Standard for Rule 12(b)(1)*

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1) is either a "facial" attack complaining that the allegations in the complaint are

insufficient to invoke federal jurisdiction or a "factual" attack in which the facts in the

complaint which form the basis of subject matter jurisdiction are challenged. *Rodriguez*

---

[7] See *Order Setting Deadline for Submission of Supplemental Materials Regarding Defendants' Motion to Dismiss* (dkt #13) entered on October 19, 2010.   The Court acknowledges that both sides had previously tendered certain documents in support of their respective positions.

*v. Texas Com'n of Arts*,  992 F.Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd,* 199 F.3d 199

(5th Cir. 2000).  In a "facial" attack, the allegations in the complaint are taken as true,

*Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995), while in a "factual"

attack, the Court may consider any evidence relevant to the determination of jurisdiction.

*Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989); *McDaniel v. United*

*States,* 899 F.Supp. 305, 307 (E.D. Tex. 1995), *aff'd,* 102 F.3d 551 (5th Cir. 1996).

The Defendants' dismissal motion for lack of standing is properly characterized as

a factual attack.  Thus, the Court may look to any one of the following sources for

determination of the Motion: (1) the complaint alone; (2) the complaint supplemented by

undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts.  *Barrera-Montenegro v.*

*United States*, 74 F.3d 657, 659 (5th Cir.1996), cited with approval in *Smith v. Potter*,

2010 WL 4009874 at *2 (5th Cir., Oct. 13, 2010) (unpublished).  The preceding facts

pertinent to the presentation of the Plaintiffs' Original Complaint, the Defendants'

Motions to Dismiss, and Plaintiffs' response to that dismissal motion are not subject to

genuine dispute.  Rather, the parties disagree about the effect or effectiveness of language

in the Blue Water Plan of Reorganization as amended, and its Disclosure Statement.  The

burden of proof regarding the existence of jurisdiction always rests with the plaintiff.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Menchaca v.*

*Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)).

*Standing and 1123(b)(3)(B)*[8]

Had Blue Water Endeavors, LLC never filed for bankruptcy protection under

Chapter 11, its standing to assert the claims presented in this case would not be in serious

dispute.  However, Blue Water is an entity recently reorganized under Chapter 11 through

the terms of a confirmed plan of reorganization and, while the bankruptcy process is

designed to enable the honest yet unfortunate debtor to obtain a fresh start, the

confirmation process results in a binding contract between a debtor and its creditors and

that process invokes certain provisions in the Bankruptcy Code which act as safeguards

for all parties involved.  One such provision is § 1123(b)(3)(B), which authorizes the

retention of certain causes of action following the plan confirmation process,

notwithstanding the "end" of the bankruptcy case and the resulting termination of the

bankruptcy estate.[9]

---

[8] Equally applicable in this context are the principles of judicial estoppel, which is an equitable doctrine that "prevents a party from taking inconsistent positions in litigation." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334 (5th Cir. 2004).  "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 205 (5th Cir. 1999).  Arguably, Blue Water should be judicially estopped from pursuing its causes of action due to the fact that it did not reserve the action in its plan of reorganization, which embodies a statement of intent on the part of the debtor with respect to the property of the estate. *See Spicer v. Laguna Madre Oil and Gas II, L.L.C. (In re Texas Wyoming Drilling, Inc.)*, 422 B.R. 612, 634-635 (Bankr. N.D. Tex. 2010) (applying the doctrine of judicial estoppel in the context of § 1123(b)(3)(B) and a failure to retain causes of action). However, the Fifth Circuit has seen fit to address § 1123(b)(3)(B) in terms of "the more fundamental question" of standing and that is the path upon which these motions will be determined. *See infra* note 14.

[9] § 1123(b)(3) provides that:

Subject to subsection (a) of this section, a plan may —
...
(3) provide for —

Following the filing of a petition under Chapter 11 and in the absence of questionable conduct by a debtor prior to the confirmation of its plan of reorganization, a debtor acts in the capacity of a debtor-in-possession that possesses all of the powers of a bankruptcy trustee to pursue claims on behalf of the estate.[10]  In that capacity, a debtor-in-possession is required to act not only in its best interests, but in furtherance of the best interests of all its creditors.[11]  One of the trustee powers given to a debtor-in-possession is the capacity to sue and be sued on behalf of the debtor.[12]  This capacity includes the standing to assert causes of action that constitute "property of the estate" under §541(a).[13]

---

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

[10] 11 U.S.C. § 1107(a); *Fanelli v. Hensley (In re Triangle Chemicals, Inc.)*, 697 F.2d 1280, 1284 (5th Cir. 1983) ["[s]ection 1107(a) places the debtor in possession in the shoes of a trustee in every way"].

[11] *Yellowhouse Mach. Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir. 1983) ("[t]he debtor, though left in possession by the judge, does not operate [the business] as it did before the filing of the petition, unfettered and without restraint,"but rather "holds its powers in trust for the benefit of creditors.") (citing *In re E. Paul Kovacs and Co., Inc.*, 16 B.R. 203, 205 (Bankr. D. Conn. 1981).

[12] 11 U.S.C. §323(a) and (b) and 11 U.S.C. §1107(a).

[13] This principle arises most often in the context of avoidance actions, but all causes of action belonging to the estate can be brought by a debtor-in-possession in Chapter 11. *See American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983). The *MortgageAmerica* court provided a brief summary of the "all-encompassing" nature of 541(a) as it relates to causes of action, stating that:

The specific meaning of the reference in section 541(a)(1) to "all legal or equitable interests of the debtor in property" is also easily discerned. Even on its face, section 541(a)(1) is all-encompassing, and Congress meant for it to be construed commensurately."

*Id.*  (internal citations omitted); *see also Gaudet v. Babin (In re Zedda)*, 103 F.3d 1195, 1200-01 (5th Cir.

Therefore, during the pendency of its Chapter 11 case, Blue Water possessed all

necessary standing to bring claims such as those before the Court.

Upon confirmation of the plan, however, the bankruptcy estate ceased to exist, and

the debtor-in-possession status previously enjoyed by Blue Water terminated.  11 U.S.C.

§ 1101(1).  As a result, Blue Water's authority to utilize §323(b) to bring a post-

confirmation action on a "claim or interest belonging to the debtor or to the estate"

expired upon the effective date of its confirmed plan unless such power was specifically

retained. *Dynasty Oil and Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540

F.3d 351, 355 (5th Cir. 2005) ["If a debtor has not made an effective reservation, the

debtor has no standing to pursue a claim that the estate owned before it was dissolved."].

Without a proper retention,[14] Blue Water's ability to exercise *control* over that potential

cause of action in the post-confirmation period expired in the absence of a retained power

to do so.[15]

_____

1997); *Asarco LLC v. Americas Mining Corp.,* 396 B.R. 278, 316 (S.D. Tex. 2008); *Breeden v. Bennett (In re Bennett Funding Group, Inc.),* 367 B.R. 269 (Bankr. N.D.N.Y. 2007).

[14]  The Fifth Circuit in *United Operating* found it unnecessary to reach issues of *res judicata* or collateral estoppel, determining that the "more fundamental" approach was dismissal based upon a lack of standing on the part of the debtor/plaintiff.  Standing is recognized as "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Horne v. Flores*, ___ U.S. ___, 129 S.Ct. 2579, 2592, 174 L.Ed.2d 406 (2009).  When a plaintiff cannot satisfy the standing requirements imposed by Article III, courts lack subject matter jurisdiction over a case.  *Bell v. American Traffic Solutions, Inc.*, 371 Fed.Appx. 488, 489, (5th Cir. 2010) (unpublished) (*citing Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009)).

[15]  Thus, it may be possible for a Chapter 7 trustee appointed in the post-confirmation period to avoid the negative impact of a debtor's failure to retain power over such causes of action.  *See, e.g.*, *Texas Wyoming*, 422 B.R. at 631-633 [holding that a debtor's failure to retain power over such claim in a confirmed Chapter 11 plan does not negatively prejudice the rights of a subsequent Chapter 7 trustee to pursue such claims].

-10-

In light of the cessation of a bankruptcy estate, however, the Bankruptcy Code specifically allows for the "retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose" of any estate causes of action through the language of the plan of reorganization itself. 11 U.S.C. §1123(b)(3)(B). According to *United Operating*, the plan must expressly provide for the claims "retention and enforcement" through "specific and unequivocal" language. *Id.* The use of generic language that merely reserves "any and all claims" held by the debtor or that simply revests all estate property without detail is insufficient to accomplish retention under §1123(b)(3)(B). *Id.* (citing *Harstad v. First Amer. Bank*, 39 F.3d 898, 901 (8th Cir. 1994); *see also McFarland v. Leyh (In re Tex. Gen. Petrol. Corp.)*, 52 F.3d 1330, 1335 n. 4 (5th Cir. 1995); *In re Nat'l Benevolent Ass'n of the Christian Church*, 333 Fed. Appx. 822, 826 (5th Cir.2009) (unpublished).

This specificity requirement "is a logical consequence of the nature of a bankruptcy, which is designed primarily to 'secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time.'" *United Operating*, 540 F.3d at 355 (citing *In re Kroh Bros. Dev. Co.*, 100 B.R. 487, 495 (Bankr. W.D. Mo. 1989)). Section 1123(b)(3) functions primarily as a "notice provision," *Harstad*, 39 F.3d at 903, which facilitates the "timely, comprehensive resolution of the estate." *United Operating*, 540 F.3d at 355. "Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it — absent specific and unequivocal retention language in the plan, creditors lack sufficient

-11-

information regarding their benefits and potential liabilities to cast an intelligent vote."

*Id.* (citing *Paramount Plastics, Inc. v. Polymerland, Inc. (In re Paramount Plastics, Inc.)*,

172 B.R. 331, 334 (Bankr. W.D. Wash. 1994) (internal quotations omitted).  Retention of

claims within the confines of a plan confirmation process indicates an intent by the debtor

to potentially pursue recovery and places creditors "in a position to seek a share of any

such recoveries, contingent though they may be . . . [C]reditors are in no position to do so

if they are not on notice that the debtor retains the power to pursue recovery." *Harstad*, 39

F.3d at 903.  The concern inherent in the specificity requirement for retention is that a

debtor may manipulate the plan process in order to "benefit itself or blind-side one of the

parties to its bankruptcy." *Spicer v. Laguna Madre Oil and Gas II, L.L.C. (In re Texas*

*Wyoming Drilling, Inc.*), 422 B.R. 612, 624 (Bankr. N.D. Tex. 2010).  Thus, *United*

*Operating* "stands for the proposition that creditors must be able to view a proposed plan

and properly evaluate the creditor's benefits and potential liabilities so that they may then

consider that information when they vote to approve or disapprove a plan." *Id.* at 625.

The purpose is not to protect all defendants who may be sued at some future time (as is

the situation in this case), but to ensure that all creditors, who are considering the

acceptance or rejection of a proposed plan of reorganization, are aware of the totality of

the estate's assets so that they may vote accordingly.  *Id.*

        The "specific and unequivocal" reservation requirement regarding §1123(b)(3)(B)

is simple to understand in principle, but its application can be a bit more problematic.  A

plan of reorganization need not identify specific potential defendants or set out in detail

the allegations which may be brought against such defendants, but rather it must in some way address the type of claim to be reserved.  *See United Operating*, 540 F.3d at 355. Indeed, the Fifth Circuit cited with approval the decision in *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324 (Bankr. D. Conn. 2005), in which a categorical reservation of "preference claims" was deemed sufficient to retain standing, though the reservation was unspecific as to the identities of particular defendants.  *Id.* at 337-338.  That categorical reservation was insufficient, however, to retain a cause of action for turnover.  *Id.* [finding no standing to pursue turnover actions where not preserved categorically in the plan]. Thus, categorical reservations can be sufficient for purposes of retention so long as the category itself is specifically described (e.g., fraudulent transfers, preferences, etc.).[16]

In any case, a proper analysis of standing in this context may incorporate consideration of related documents, such as the disclosure statement or the statement of financial affairs.[17]  *Texas Wyoming*, 422 B.R. at 629-630; *see also, U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.*), 301 F.3d 296, 307 (5th Cir. 2002); *Official Creditors Comm. of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.)*, 635 F.2d 365, 369 (5th Cir. 1981).  The interplay of these related

---

[16]  *See, e.g.*, *Moglia v. Keith (In re Manchester, Inc.)*, 2009 WL 2243592, *4-5 (Bankr. N.D. Tex. July 16, 2009) [holding that retention language that lists the causes of actions to be retained by Code section number sufficient as categorical reservations under *United Operating*].

[17]  In the context of plans of reorganization, the disclosure statement is typically executed alongside the plan itself to provide additional information, thus it can be considered together with the plan itself. *See Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 704 (9th Cir. B.A.P. 1996) ["if the debtor fails to mention the cause of action in either his schedules, *disclosure statement*, or plan, then he will be precluded from asserting it postconfirmation"] (emphasis added).

documents in this context is highlighted by the decision in *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622 (S.D. Tex. 2009).  In *Floyd*, the plan of reorganization stated simply that the "Reorganized Debtor shall have all the power of the Trustee to prosecute claims, including the power to prosecute all claims and causes of action that the Chapter 11 Trustee could have asserted." *Id.* at 638.  Recognizing that the specificity requirement is rooted in the notice provided to creditors in the confirmation process, however, the district court looked beyond the strict language of the plan and examined the contents of the disclosure statement, which had reserved all "Litigation claims" to the reorganized debtor and defined the phrase to include "claims for breach of fiduciary duty, alter ego, single business enterprise, self-dealing, usurpation of corporate opportunity, denuding, and similar claims. . . ."  *Id.*  Reading the two documents together, the district court held that:

> Under *United Operating*, the blanket reservation in the Reorganization Plan in itself, is insufficient to constitute a specific and unequivocal reservation of claims. See *United Operating*, 540 F.3d at 356.  However, the Disclosure Statement is a supplement to the plan and, in combination, they accomplish the reservation of claims Plaintiff seeks to assert against CIBC.  Indeed, the Disclosure Statement reserved breach of fiduciary duty claims and "*S.I. Acquisition* type claims," and specifically stated that it was considering bringing claims against CIBC after plan confirmation.

*Id.* at 638-39 (internal footnotes omitted).

Thus, particularly given the focus of *United Operating* in protecting the expectation of creditors arising from the confirmation process, "the importance and critical role of the

-14-

disclosure statement is clear, and its significance and usefulness in parsing the underlying plan is unquestionable." *Texas Wyoming*, 422 B.R. at 630 n. 19.[18]  Therefore, the Court will look collectively at the language of the Debtor's confirmed plan, its order, as well as to its disclosure statement to determine whether the Blue Water plan of reorganization "specifically and unequivocally" reserved to the Reorganized Debtor the power to assert the challenged causes of action.

According to Blue Water, there are two sections in its disclosure statement which it believes meets the Fifth Circuit's "specific and unequivocal" retention requirement.[19] The first is a paragraph on page 4 of the Disclosure Statement providing an outline of the events directly preceding Blue Water's filing of bankruptcy.  That paragraph is entitled "Events Leading up to Chapter 11 Filing" and states in relevant part:

> The major contributing factors for the filing of this bankruptcy case by the Debtor were that representations that were made when Fat Mac's Smokehouse was purchased as to the then sales and net numbers have never materialized. In fact, the total sales volume and the net income have not been close to the representations that induced the purchase. Further, the appraisal of the subject real property that was relied upon by purchaser now appears to have been agrediously [sic] higher than the actual fair market value of the subject property. In this regard, Debtor through management has sought a broker to see about selling the business and was informed not only would the business not sell for what was owed on it, much less what

---

[18] For a more in-depth discussion of why courts should look to the plan and disclosure statement collectively, see *Texas Wyoming*, 422 B.R. at 629-631.

[19]  Plaintiff's Objection at 2, ¶ 4.

was paid on it, with the value of the real estate being estimated at $25,000.00 to $300,000.00 vs. $750,000.00 paid by Debtor for it, less than 1.5 years prior.

Disclosure Statement at 4, ¶ D.  Blue Water also references the liquidation analysis attached to its Disclosure Statement which lists as a possible asset: "Lawsuits or other claims against third-parties to be determined - could exceed $70,000.00."

Neither of these sections contains sufficient language to reserve or retain any causes of action against any party.  While the general factual background regarding Blue Water's pre-petition financial posture as outlined in the Disclosure Statement could arguably give rise to a cause of action, no reference is ever made in that passage to any contemplation of litigation arising from those financial problems.  We know from *Harstad* and *United Operating* that a general description of a cause of action is insufficient.  Instead there must be an identifiable intent to bring such an action.  This passage falls far short of the required standard.

As for the line item in Exhibit E to the Disclosure Statement referencing "Lawsuits or other claims," this generic reference is also insufficient.  Again, the purpose of the specificity requirement is to ensure that creditors are provided sufficient information, including a debtor's intentions regarding post-confirmation litigation, to determine how to vote on a proposed plan of reorganization.  Without more specific language stating the type of claim to be asserted or the category in which the potential cause of action may be properly placed, a creditor could not have properly surmised that post-confirmation

**-16-**

litigation by Blue Water was anticipated. That intent cannot be assumed by the Court. Further, there is no reservation language contained in these references.[20]

Upon review of the relevant documents, the Court concludes that the language contained in Blue Water's confirmed Chapter 11 plan and accompanying Disclosure Statement is insufficient to meet the Fifth Circuit's "specific and unequivocal" requirement under §1123(b)(3)(B) and that, therefore, Blue Water does not possess standing as a reorganized debtor to bring the litigation against these Defendants in any court in the post-confirmation period. Accordingly, the respective motions of the Defendants for dismissal pursuant to Rule 12(b)(1) shall be granted as to Blue Water and all causes of action filed by Blue Water Endeavors, LLC against all of the Defendants shall be dismissed.

*Remand to State Court*

Blue Water's lack of standing to pursue its asserted claims does not, however, preclude the remaining plaintiffs, Robert and Dawn Nordberg, from asserting any claims which they might possess in their respective individual capacities against the Defendants. Neither of the motions to dismiss filed by the collective defendants address the standing of the individual plaintiffs, and the dismissal request as to the individual plaintiffs are

---

[20] Another section of the Disclosure Statement (page 5, ¶ F) appears to reserve the Debtor's power to recover avoidable transfers. It states in relevant part that "[T]he Debtor is not aware, at this time, of any avoidable transfers, but upon becoming aware or identification of any such preferences, fraudulent conveyance, or other avoidance action, Debtor shall pursue same." However, the causes of action at issue in this case are not avoidance actions and that categorical reservation, even if valid, is ineffective to accomplish the retention of the claims asserted by the Debtor in this action.

**-17-**

based upon the merits, or lack thereof.

Upon resolution of the bankruptcy-related issues and the dismissal of the claims asserted by Blue Water as a reorganized debtor, we are left with individual, non-debtor plaintiffs seeking a remedy against non-debtor defendants.  Without determining whether subject matter jurisdiction could continue to be exercised by this Court, it is clear that the proper course of action is to grant the Plaintiffs' motion to remand the remaining claims back to the state court in which they were initiated.

The principles of equitable remand support such a result.[21]  Included among the factors to be considered are:  (1) *forum non conveniens*; (2) whether the civil action was bifurcated by removal which favors a trial of the entire action in state court; (3) whether the state court has greater ability to respond to questions of state law; (4) the particular court's expertise; (5) the inefficiencies of proceedings in two forums; (6) prejudice to the involuntarily removed party; (7) comity considerations; and (8) a lessened possibility of an inconsistent result.  *Browning v. Navarro*, 743 F.2d 1069, 1076, n.21 (5th Cir. 1984); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 603 (S.D. Tex. 1999).[22]

---

[21]  28 U.S.C. §1452(b) states, in relevant part, that:
The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

[22]  *See also Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (E. D. Tex. 2001) in which Judge Cobb noted the similarity of discretionary abstention with the equitable remand doctrine and articulated the following considerations as applicable to each:  (1) the effect or lack thereof on the efficient administration of the estate if the court remands or abstains; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis,

In light of these factors, remand is particularly appropriate.  The sole party through which a connection to §1334 jurisdiction was purportedly based has now been dismissed from the proceeding and no other basis for federal court jurisdiction has been asserted. The sole issue involving bankruptcy jurisprudence has been resolved.  All that remains are exclusively state law issues among non-debtor parties.  While that fact alone does not mandate a remand in most circumstances, nor require a finding that the state court has specialized expertise to try this type of suit, this Court believes that there is a basic comity principle which recognizes that a state court is better situated to determine issues of state law when there is no compelling connection to a bankruptcy case.  Indeed, no issue remaining in the case indicates that the expertise of a federal bankruptcy court is particularly needed.  Considering all the above, and in particular deference to the right of state courts to adjudicate disputes based upon state law, the Court concludes that the Plaintiffs' Motion to Remand should be granted as to all causes of action asserted by the individual Plaintiffs and that such causes of action shall be remanded to the 58th Judicial District Court in and for Jefferson County, Texas.[23]

---

if any, other than §1334; (6) degree of relatedness or remoteness of proceeding to main BK case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

[23] In light of the dismissal of the claims of the reorganized debtor and the applicability of the remand factors, the request for the dismissal of the claims asserted by the individual Plaintiffs shall be reserved for the state court.

-19-

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[24] pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.  Appropriate orders shall be entered which are consistent with this opinion.


Signed on 01/06/2011


THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[24]  To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.